UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America | No. 3:21-CR-00156 (KAD) |
| v. | |
| Dimitri Blanding | January 6, 2022 |

### RULING ON MOTION TO MODIFY CONDITIONS OF RELEASE

The Defendant has moved to modify the conditions of his pretrial release "to allow him to use marijuana in compliance with his Connecticut Department of Consumer Protection medical marijuana certificate." (ECF No. 201.) The Defendant states that marijuana helps to relieve his symptoms resulting from his diagnosis of post-traumatic stress disorder, or "PTSD." (*Id.*) For the following reasons, the Defendant's Motion to Modify Conditions of Release is **DENIED**.

**I.      Procedural Background**

On September 14, 2021, a federal grand jury returned an indictment charging the Defendant and others with one count of conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and one count of possession with intent to distribute and distribution of heroin and fentanyl in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). (ECF No. 1.) At the Defendant's initial appearance before this Court on September 16, 2021, the Court also conducted a bond hearing and considered the issue of the Defendant's pretrial release. (ECF No. 28.) This Court subsequently issued an Order Setting Conditions of Release, which included mandates that (1) the Defendant must not violate federal, state, or local law while on release, (2) the Defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702, (3) the Defendant must advise the court or the pretrial services

office or supervising officer in writing before making any change of residence or telephone number, (4) the Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose, (5) the Defendant must submit to testing for prohibited substances if required by the pretrial services office or supervising officer, (6) and the Defendant must sign an unsecured appearance bond in the amount of $100,000.00.  (ECF No. 49.)

The Defendant filed his motion to modify conditions of release on November 15, 2021. (ECF No. 201.)  He attached his Connecticut medical marijuana card to the motion, which he received as a result of his diagnosis of PTSD.  (*Id.*)  He further averred that medical marijuana helps him to "sleep, eat, avoid nightmares, remain calm, cope with the tragic events that happened to him in the past, and [handle] anger management."  He says that he "did not do well with normal prescription medicines in the past and is not doing well now, being denied use of his medical marijuana authorization."  (*Id.* at 1.)  Further, the Defendant argued that "[i]t is important that [he] be and remain healthy during the period of time his case is pending in order to be able to assist counsel in his defense."  (*Id.*)  His principal legal argument in support of the motion was that the Rohrabacher-Farr Amendment, an appropriations rider that prohibits the United States Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws, should also functionally prohibit federal courts from prohibiting the use of medical marijuana while defendants are on pretrial release.  (*Id.*)  The Government opposes the motion, and the Court held oral argument on December 1, 2021.  (ECF No. 208.)  The motion is now ripe for decision.

## II. Discussion

### a. The conflict between the Bail Reform Act and Connecticut's medical marijuana law

The Bail Reform Act provides district courts with four options for releasing or detaining defendants pending trial. Specifically, a court must issue an order to (1) release the defendant on personal recognizance or upon execution of an unsecured bond; (2) release the defendant on a condition or combination of conditions; (3) temporarily detain the defendant to permit revocation of conditional release, deportation, or exclusion; or (4) detain the defendant if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(a)-(e).

Both release options – that is, options (1) and (2) – direct the court to order that the defendant not violate federal law while on release. When it is appropriate to release the defendant on his own recognizance, or upon execution of an unsecured appearance bond, 18 U.S.C. § 3142(b) requires that his release be "subject to the condition that the person not commit a Federal, State, or local crime during the period of release." And when release on recognizance is insufficient to "reasonably assure the appearance of the person as required . . . [or] the safety of any other person or the community," 18 U.S.C. § 3142(c) provides that he may be released on conditions – but again, "subject to the condition that the person not commit a Federal, State, or local crime during the period of release." Unlike other conditions that the court may impose under Section 3142(c), the condition that the "person not commit a Federal . . . crime" is not subject to the requirement that it be "the least restrictive further condition" that will reasonably assure community safety or appearance at trial. 18 U.S.C. § 3142(c)(1)(A).

The possession of marijuana is illegal under federal law. "It [is] unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained

3

directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . . ." 21 U.S.C. § 844(a); *see also Gonzales v. Raich*, 545 U.S. 1, 13-14 (2005). The Controlled Substances Act classifies marijuana and THC[1] as Schedule I controlled substances. *See* 21 U.S.C. § 812. The Act defines Schedule I substances as follows: (A) The drug or other substance has a high potential for abuse, (B) the drug or other substance has no currently accepted medical use in treatment in the United States, (C) there is a lack of accepted safety for use of the drug or other substance under medical supervision. 21 U.S.C. § 812(b)(1). "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales*, 545 U.S. at 14.

The federal possession statute exempts certain prescribed medicines; *see* 21 U.S.C. § 844(a); but this exemption does not apply to marijuana. While Connecticut has now legalized medicinal and recreational use of marijuana; s*ee* Conn. Gen. Stat. § 21a–408 et seq.; CT LEGIS 1SP 21-1 (S.B. No. 1201), 2021 Conn. Legis. Serv. June Sp. Sess. P.A. 21-1 (S.B. No. 1201) (S.B. 1201); "[t]here is no federal exception for medical marijuana because the statutory prescription exception does not cover Schedule I drugs such as marijuana." *United States v. Arizaga*, No. 16-CR-89-LTS, 2016 WL 7974826, at *2 (S.D.N.Y. Dec. 22, 2016) (citing *Gonzales*, 545 U.S. at 1). When federal and state law conflict in this way, federal law of course prevails. "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Gonzales*, 545 U.S. at 29. This includes conflicts with respect to marijuana.

---

[1] THC or tetrahydrocannabinol is the predominant psychoactive ingredient in marijuana. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 955 (8th Cir. 2009).

*See United States v. Schostag*, 895 F.3d 1025, 1028 (8th Cir. 2018); *United States v. Hicks*, 722 F. Supp. 2d 829, 833 (E.D. Mich. 2010) ("It is indisputable that state medical-marijuana laws do not, and cannot, super[s]ede federal laws that criminalize the possession of marijuana."). Accordingly, possession of even "prescribed" medical marijuana is still illegal under federal law. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 486 (2001) (holding that the CSA contains no exception for medically-prescribed marijuana and physicians cannot prescribe marijuana consistent with federal law).[2]

Since courts must impose the condition that the Defendant not violate federal law, and since possession of marijuana is illegal under federal law, district courts around the country routinely deny motions such as this one. In *United States v Pearlman*, for example, the defendant moved to modify his conditions of pretrial release to remove the drug testing condition so that he could participate in the State of New Jersey's medical marijuana program. No. 3:17-CR-00027(MPS), 2017 WL 7732811, at *1 (D. Conn. July 7, 2017). While the court principally responded to the defendant's arguments that the drug testing condition was unconstitutional and was not the least restrictive means to satisfy 18 U.S.C. § 3142, it also noted the conflict created by the mandatory conditions of the Bail Reform Act, concluding that it "cannot, and will not, sanction the violation of federal law by a defendant on pre-trial release, even if state law and the weight of

---

[2] The Court also notes that even if marijuana had been one of the controlled substances to which the "valid prescription or order" exception applies, Mr. Blanding has not demonstrated that he has such a "prescription or order." The Connecticut Palliative Use of Marijuana Act does not require a physician to "prescri[be] or order" marijuana; it merely requires him or her to issue a written certification that the patient has a debilitating medical condition for which the potential benefits of the palliative use of marijuana would likely outweigh the health risks. *See* Conn. Gen. Stat. §§ 21a-408a-c. Thus, in coming forward with a Connecticut Department of Consumer Protection "medical marijuana card," Mr. Blanding has shown only that a physician certified that he has a debilitating condition, and that the benefits of palliative marijuana use would outweigh the risks in his case. That is a different thing from showing that a physician prescribed it to him, or ordered it for him.

public opinion appear to contradict that federal law." *Id.* at *8. Similarly, in *United States v. Kelly*, the defendant asked the court to rescind his drug testing condition so that he could use medical marijuana. 419 F. Supp. 3d 610, 611 (W.D.N.Y. 2019). The court denied the motion, explaining that "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989)). And in *United States v. Attisano*, the defendant likewise moved to modify his conditions of pretrial release so that he could use medical marijuana for his PTSD. No. CR 20-354, 2021 WL 3860668, at *1-2 (W.D. Pa. Aug. 30, 2021). Citing *Pearlman*, the court also concluded that it could "not sanction the violation of federal law by a defendant on pretrial release." *Id.* at *4.

Other district courts agree. In *United States v. Mitchell-Yarbrough*, ruling on a similar motion, the court concluded that "when considering the interplay between the two statutes, the law is clear: the Supreme Court's interpretation of the Controlled Substances Act compels we conclude [the defendant] may not use medical marijuana under federal law . . . ." No. CR 18-32, 2021 WL 3738911, at *5 (W.D. Pa. Aug. 24, 2021). In *United States v. Meshulam*, denying a motion to modify conditions of release, the court concluded that "personal opinions have no role in this [c]ourts decision; the [c]ourt is bound to follow federal law. If this [c]ourt were to grant [d]efendants request to permit him to use medical marijuana while on federal pretrial release, it would be authorizing [d]efendant to violate federal marijuana laws while a federal criminal prosecution is pending against him. This the [c]ourt cannot do." No. 15-8001 L-CR, 2015 WL 894499, at *4 (S.D. Fla. Mar. 3, 2015).

Other federal courts – including two courts of appeal – have agreed with these principles in the analogous context of post-conviction supervised release. In that context, as here, defendants are ordered "not [to] commit another Federal, State, or local crime." *See* 18 U.S.C. § 3583. In

*United States v. Schostag*, a defendant on supervised release argued that the district court should have permitted his use of vaporized THC oil that his physician had prescribed him for chronic pain. 895 F.3d at 1026-27. After reviewing the conflict between state and federal law, the Eighth Circuit concluded that the "district court had no discretion to allow [the defendant] to use medical marijuana while on supervised release." *Id.* at 1028. The Ninth Circuit has also concluded that individuals on federal supervision cannot use marijuana. *See United States v. Nixon*, 839 F.3d 885, 888 (9th Cir. 2016) (affirming district court's denial of motion to modify terms of probation so defendant could use marijuana); *United States v. Harvey*, 659 F.3d 1272, 1273 (9th Cir. 2011) (affirming district court's order finding defendant in violation of conditions of supervised release based on his use of marijuana). And in *United States v. Johnson*, the court ruled that defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any state, and characterized such a ruling as "join[ing] the chorus of others recognizing that a defendant under federal supervision may not use medical marijuana in compliance with [state] law." 228 F. Supp. 3d 57, 62 (D.D.C. 2017). This Court's research confirms that there is indeed a chorus of courts holding accordingly. *See, e.g., United States v. Bey*, 341 F. Supp. 3d 528, 531 (E.D. Pa. 2018) ("The Supreme Court's interpretation of the Controlled Substances Act compels we conclude [the defendant] may not use medical marijuana under federal law."); *United States v. Hicks*, 722 F. Supp. 2d 829; *United States v. Small*, No. CR-10-91-BLG-RFC, 2010 WL 4922510, at *2 (D. Mont. Nov. 29, 2010); *United States v. Perla*, No. CR 20-281, 2021 WL 461881, at *3 (W.D. Pa. Feb. 9, 2021); *United States v. Griffin*, No. CR 21-385-6, 2021 WL 5917185, at *2 (W.D. Pa. Dec. 14, 2021).

While a few courts have substantially allowed a defendant to use marijuana while on pretrial release, those decisions are justly criticized outliers. In *United States v. Arizaga*, for

example, the court did not delete the mandatory condition, but practically allowed the defendant to use marijuana when it "direct[ed] this [c]ourt's Pretrial Services Department not to charge a violation of [d]efendant's release conditions based solely on New York state-approved medical marijuana use." *Arizaga*, 2016 WL 7974826, at *3; *see also United States v. Perla*, 2021 WL 461881, at *3 n.1 (denying motion, but listing in a footnote three unpublished orders that permitted use). Yet the *Kelly* court criticized this ruling because it "invited disobedience of [the] release order, thereby send[ing] the wrong message to recalcitrant parties . . . that defiance goes unpunished. . . . A court order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . ." *Kelly*, 419 F. Supp. 3d at 611 (internal quotation marks and citations omitted).

Since this Court must impose the condition that the Defendant not violate federal law, and since possession of marijuana remains illegal under federal law, the Court joins the many other courts that have denied motions such as the Defendant's. "[T]he Constitution vests the judicial power with the Courts, whereby [C]ourts interpret a law as enacted by the legislature and do not annex new provisions or substitute different ones, or read into a statute exceptions, limitations or conditions which depart from its plain meaning." *Mitchell-Yarbrough*, 2021 WL 3738911, at *7 (internal quotation marks omitted). The applicable sections of the Bail Reform Act and the Controlled Substances Act are plainly in conflict with state medical marijuana laws. This federal court cannot judicially sanction violations of federal law. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 736 (2014) ("The wisdom of Congress's judgment on this matter is not our concern. Our responsibility is to enforce [the statute] as written[.]"). Accordingly, this Court is bound to conclude that a Defendant on federal pretrial release may not use medical marijuana, whether it is in compliance with state law or not.

### b. The Appropriations Rider

The Rohrabacher-Farr Amendment was originally passed by Congress in 2014 as an appropriations rider in an omnibus appropriations bill; it has been renewed each year since then and remains in effect. *See United States v. McIntosh*, 833 F.3d 1163, 1169 (9th Cir. 2016); *United States v. Weigand*, 482 F. Supp. 3d 224, 239 (S.D.N.Y. 2020), as corrected (Sept. 2, 2020). The Rider is currently codified at Section 531 of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, December 27, 2020, 134 Stat. 1182 (the "Appropriations Rider" or "Rider"), and was recently extended by the Further Extending Government Funding Act, 2021, Pub. L. No. 117-70, December 3, 2021, 135 Stat. 1499. It provides that "[n]one of the funds made available under this Act to the Department of Justice may be used, with respect to any of the States . . . [including] Connecticut . . . , to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Pub. L. No. 116-260, December 27, 2020, 134 Stat. 1182.

The Defendant argues that the Appropriations Rider prohibits the court from imposing a condition that does not allow the Defendant to use medical marijuana, based on the Ninth Circuit's interpretation of the Rider in *United States v. McIntosh*, 833 F.3d 1163, 1169 (9th Cir. 2016). (ECF No. 201, at 2.) In *McIntosh*, ten defendants were indicted on various charges related to the production and sale of marijuana. 833 F.3d at 1169. They moved to dismiss their indictments on the grounds that the Department of Justice was prohibited from spending funds to prosecute them, arguing that their use was compliant with state medical marijuana laws. *Id.* The Government argued that the Rider "does not prevent the Medical Marijuana States from giving practical effect to their medical marijuana laws by prosecuting private individuals, rather than taking legal action against the state." *Id.* at 1176. The court was not persuaded, ruling that the Rider "prohibits DOJ

9

from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws." *Id.* at 1177.

Even if we assume that the Second Circuit would rule as the Ninth Circuit did in *McIntosh*, which it has not, the Defendant's argument is meritless for two reasons. First, the plain language of the Rider does not apply to federal courts. "On its face, the Appropriations Rider restricts only the DOJ's ability to use certain funds on particular prosecutions during a specific fiscal year." *Nixon*, 839 F.3d at 888 (holding that a district court did not abuse its discretion in refusing to modify a defendant's conditions of probation to allow him to use marijuana for medical purposes); *United States v. Jackson*, 388 F. Supp. 505, 513 n.8 (E.D. Pa. 2019) ("[A] federal court [is] an entity that is not funded by the DOJ and therefore not covered by the Rider.") (citation omitted). "[N]othing in the Rider permits Federal Courts to authorize violations of federal law." *Mitchell-Yarbrough*, WL 3738911, at *8. Although the Rider forbids the Department of Justice from spending its funds to prosecute medical marijuana use that is legal under state law, it "neither impacts Federal Courts, which operate independently of the Department of Justice, nor authorizes them to modify statutorily mandated conditions of supervised release." *Id.*

Moreover, as several courts have observed, this argument is premature unless and until the Government attempts to prosecute the Defendant for possessing marijuana. "To the extent Defendant suggests that the Appropriations Rider bars the DOJ from expending funds to enforce a violation of pretrial release for medical marijuana possession and use, his motion is premature given the particular circumstances of this case. As noted, there is no pending petition charging that Defendant has violated any condition of his pretrial release." *Perla*, 2021 WL 461881, at *4. Put differently, "Defendant's Appropriations Rider argument becomes relevant only if or when the

Probation Office petitions to violate Defendant under the terms of his release and the Government attempts to prosecute said petition." *Mitchell-Yarbrough*, 2021 WL 3738911, at *8. Whether the Rider would prevent prosecution for marijuana possession is a separate question, but the Rider has no bearing on whether a federal court can sanction a defendant's use of marijuana and the commission of a federal crime.

c. **Constitutional arguments**

The Defendant's argument is principally based upon the Appropriations Rider, but also contains an assertion that the motion is "based upon the Fifth and Eighth Amendments to the United States Constitution." (ECF No. 201, at 1.) He also argues that "[i]t is important that [the Defendant] be and remain healthy during the period of time this case is pending in order to be able to assist counsel in his defense;" (*Id.*); which the Court construes as a Sixth Amendment claim, as the Sixth Amendment's protections include a right to participate in one's defense. *See United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014). None of these constitutional protections provide support for the Defendant's position.

The Fifth Amendment's due process protections do not restrict a federal court from prohibiting the use of medical marijuana. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The right to use marijuana, however, is not a fundamental right and the authority of the United States to prohibit the use of marijuana has already been decided." *United States v. Small*, No. CR-10-91-BLG-RFC, 2010 WL 4922510, at *2 (D. Mont. Nov. 29, 2010); *see also Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) ("[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician . . . ."); *Pearlman*, 2017 WL 7732811 at *7 (rejecting due process claim in similar context).

Nor does denying access to medical marijuana while on pretrial release qualify as cruel and unusual punishment. First of all, the Court notes that the Defendant has no colorable Eighth Amendment claim, as that Amendment applies only to convicted and sentenced prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 579 (1979) ("Nor is this an Eighth Amendment case. That provision of the Constitution protects individuals *convicted* of crimes from punishment that is cruel and unusual.") (Stevens, J., dissenting) (emphasis added). Accordingly, the Court construes this claim as an argument that restricting the Defendant's use of medical marijuana constitutes cruel and unusual punishment, which violates his due process rights. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause . . . , rather than the Cruel and Unusual Punishments Clause of the Eight Amendment."). Second and more substantively, the Court notes that the Defendant has provided no evidence to suggest that medical marijuana is the only method of controlling his PTSD symptoms. *See United States v. Nixon*, 669 F. App'x 832, 833 (9th Cir. 2016) ("Any possible construction [of the defendant's] Eighth Amendment claim would require consideration of his personal medical condition."). Additionally, Judge Merriam observed in *Pearlman* that most of the cases discussing cruel treatment of pretrial defendants concern detainees, rather than defendants on pretrial release. 2017 WL 7732811 at *7. Judge Merriam then observed, and this Court agrees, that no support exists for the proposal that failure to provide a particular form of medical care to a defendant released on bond is a violation of the defendant's due process rights. *Id.* In any event, the "[D]efendant's argument would fail under even a traditional Eighth Amendment analysis, because it is well established that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Id.* (internal quotation marks omitted) (citing *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011)); *see also Harris v. Lake Cty.*,

No. 15-cv-03117-NJV, 2016 WL 107488, at *3 (N.D. Cal. Jan. 11, 2016) (holding that denying medical marijuana to prisoners does not constitute cruel and unusual punishment and collecting cases).

Finally, there is nothing in the record to suggest that marijuana is necessary for the Defendant to be able to assist in his defense. To be sure, "a criminal defendant must possess sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding;" *Crandall*, 748 F.3d at 481; but a defendant bears the burden of proving that he is incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996). In *Pearlman*, Judge Merriam denied a similar claim because "the record reveal[ed] a variety of treatment options for defendant that do not require the use of either marijuana or opiate pain medications." 2017 WL 7732811 at *7. Here, the record contains no evidence that the Defendant's PTSD even impedes his ability to consult with his lawyer, let alone any evidence that marijuana is necessary to restore that ability. The defendant has failed to demonstrate that depriving him of medical marijuana would hinder his ability to assist in his defense.

### III. Conclusion

"Congress may one day decide to legalize the possession of marijuana for medical (or other) purposes. However, it has yet to do so, and where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Kelly*, 419 F. Supp. 3d at 611. "The Court cannot, and will not, sanction the violation of federal law by a defendant on pre-trial release, even if state law and the weight of public opinion appear to contradict that federal law." *Pearlman*, 2017 WL 7732811, at *8.

For the foregoing reasons, the Court **DENIES** the Defendant's Motion to Modify Conditions of Release. (ECF No. 201.)

Dated this 6th day of January, 2022, at Hartford Connecticut.

*/s/ Thomas O. Farrish*
Thomas O. Farrish
United States Magistrate Judge